## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Ted McCracken,* | : | |
| Plaintiff, | | |
| – vs – | : | |
| | | |
| COUNTY OF UNION, NEW JERSEY, | : | |
| Municipality, sued in its individual and | | |
| official capacities, | : | |
| | | |
| CORRECTION OFFICER HOLMES, Guidance Unit, | : | |
| New Jersey State Home For Boys (Jamesburg), | | |
| sued in his individual, official capacities and | : | |
| his Estate, | | |
| | : | |
| VICTORIA L. KUHN, Acting Commissioner, | | |
| predecessor, New Jersey Department of | : | JURY TRIAL DEMAND |
| Corrections, sued in her individual and | | |
| official capacities, | : | |
| | | Index No. _____ |
| The Estate of RICHARD HUGHES, GOVERNOR, | : | |
| STATE OF NEW JERSEY, 1962-1970, sued in | | |
| his individual, official capacities, and his ESTATE, | : | |
| | | |
| DEPARTMENT OF PROBATION, COUNTY OF | : | |
| UNION, NEW JERSEY, sued in its individual | | |
| and official capacities, | : | |
| | | |
| JAMES DOE I, Probation Officer, for County of | : | |
| Union (NJ) Probation Department, sued in his | | |
| Individual and official capacities, and his | : | |
| Estate, | | |
| | : | |
| JANE DOE I, Probation Officer, for County of | | |
| Union (NJ) Probation Department, sue in | : | |
| her individual and official capacities, and | | |
| her Estate, | : | |
| | | |
| The Estate of Mr. Clements, Supervisor, Parent of | : | |
| Cottage, NJ State Home For Boys (Jamesburg), sued | | |
| in his individual, official capacities and his estate, | : | |

* Only initials are being used because this a sexual assault/abuse case.

The Estate of Mrs. Clements, Supervisor, Parent          :
of Cottage Unit, New Jersey State Home For Boys
(Jamesburg), sued in his individual and official          :
capacities, and her estate,

                                                          :

**The Estate of JOHN DOE**, Correctional Officer,
Reception Unit, NJ State Home for Boys (Jamesburg),       :
sued in his individual and official capacities, and his
estate,                                                   :

**The Estate of JOHN DOE I**, Superintendent,            :
NJ State Home For Boys, sued in his individual
and official capacities, and his estate,                  :

The Estate of JOHN DOE II, Assistant Superintendent,     :
NJ State Home For Boys (Jamesburg), he is sued in his
Individual and official capacities and Estate,            :

**The estate of MR. WILLIAMSON**, Correctional Officer,  :
Cottage Unit Supervisor, NJ State Home For Boys, sued
in his individual, official capacities, and his estate,   :                              :

Brian Renshaw, President, PBA Local 105, sued in his     :
Individual and official capacities,

                                                          :

Correctional Officer _____ NJ State Home For Boys
(Jamesburg), sued in his individual and official          :
capacities, and his estate,

                                                          :

JOHN DOE III, Director, NJ Department of Correctional
Services, Juvenile Institutions. He is sued in his        :
Individual and official capacities and his estate.

                                                          :

COUNTY OF UNION, NEW JERSEY, sued in its individual
and official capacities,                                  :

JAMES DOE, Probation Department Chief,                   :
County of Union, (NJ) Probation Department,
sued in his individual and                                :
official capacities, and his Estate;

                                                          :

JANE DOE I, Probation Officer, County of Union, NJ
Probation Department, sued in her individual and          :
official capacities, and her Estate;
                              Defendant(s).               :

_____

## CIVIL COMPLAINT WITH JURY DEMAND

### *PRELIMINARY STATEMENT*

This is a civil rights action brought pursuant to New Jersey Senate Bill S676/Assembly Bill A3443 signed into law by Governor Phillip Murphy in 2019 which extended the statute of limitations so to enable victims of child sexual abuse to bring suit. In the instant case it is alleged that defendants/ employees of the NJ State Home For Boys were acting under color of state law and did repeatedly sexually abuse plaintiff, then 12 years of age, while held incommunicado, unable to contact his parents by engaging in sadomasochistic beatings across his bare buttocks without justification nor explanation, but gratifying himself. Plaintiff further alleges that he was targeted for racially motivated brutal physical sexual assaults by placement without supervision in unit of thirty 30 and no whites. Was put in long-term solitary confinement for trying to escape the terror. These acts constitute Cruel and Unusual Punishment, Denial of Due Process and Equal Protection in violation of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution for which money damages and declaratory judgment is sought pursuant to 42 U.S.C.A. 1983. The plaintiff also alleges torts of assault and battery, Negligence and Intentional Infliction of Emotional Distress.

### *JURISDICTION*

1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C.A. 1331(1) and 1343 (i.e. pattern of sexual abuse/assault (i.e. beatings across nude buttocks) of 12 year old boy by state staff member in initial weeks of commitment to NJ State Home For Boys (Jamesburg) and the Complete failure of staff to protect or intervene when sexual assaults occur on 12 year old boy, and use of long-term solitary confinement constituted Cruel and Unusual Punishment(s), Denial of Equal Protection, Denial of Due Process forbidden by the 5th, 8th and 14th Amendments to the United States Constitution.

2. The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C.A. 1367.

3. The court has jurisdiction pursuant to 28 U.S.C. 1332 (diversity) because the plaintiff resides in Pennsylvania while all the defendants reside in New Jersey.

4. On or about May 15, 2019, NJ Governor Phillip Murphy signed legislature S477, extending the two (2) year statute of limitations so to enable persons whom were sexually abused years ago to file suit now. The extension expires on November 30, 2021.

### PARTIES

5. The plaintiff, Ted McCracken*, at 12 years of age, was incarcerated at the New Jersey State Home for Boys located in Monroe Township, New Jersey (A.K.A. JAMESBURG) during the events described in this complaint. Plaintiff, 67, currently resides outside New Jersey. Plaintiff's name and address (15 Derry Drive, North Wales, PA 19454) should be redacted to hide his identity, because this is a sexual assault/abuse case.

6. Plaintiff is a resident of Pennsylvania, and the events complained of herein occurred in New Jersey, so plaintiff brings this action based upon the diversity of citizenship.

7. Plaintiff brings this action in federal court because the acts complained of constituted violations of the U.S. Constitution, Amendment 5, 8, and 14, CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE 8th Amendment, including sexual assault, targeting for racial attacks, solitary confinement upon plaintiff when he was a 12 year old boy.

8. Defendant(s), The Estate of JOHN DOE, Correctional Officer WILLIAMSON, Correctional Officer Holmes are correctional officers employed at Jamesburg who at all times mentioned herein acted under color of state law. They are sued in their individual, official capacities and their estates.

9. Defendant, The Estate of JOHN DOE is a male correctional officer employed at Jamesburg State Home For Boys. He was a Correctional Officer who worked in the MAXIMUM SECURITY Reception Unit, customarily during the 3pm to 11pm shift. His physical description is that he is negro male,

4

approximately 35 years old at the time of the incidents, of mixed racial descent, probably Dominican, principally negroid, with a yellow complexion, 6' 3" in height and 300 lbs. in weight. He is sued in his individual and official capacities, as well as his Estate. Defendant's identity and address is currently unknown, though will be discovered through the Discovery process.

10. Defendant JOHN DOE I was at all times mentioned herein the Superintendent of Jamesburg, NJ State Home for Boys located in Monroe Township, NJ. Defendant's physical description is that he is a Caucasian male, 5'9", approximately 60 yrs. old in 1965, with a bald head, and no eyebrows. It was speculated that the Superintendent had a rare disease which caused him to have no hair. He is sued in his individual and official capacities, and his Estate. Defendant's identity and address is currently unknown, though, will be sought to be discovered through the Discovery Process.

11. Defendant JOHN DOE II was at all times mentioned herein was the Assistant Superintendent of the New Jersey State Home For Boys located in Monroe Township, Middlesex County, NJ. He is sued in his individual and official capacities and his Estate. Defendant's identity and address is currently unknown, though, will be sought to be discovered through the Discovery Process.

12. Defendant Correctional Officer WILLIAMSON was at all times mentioned herein a Correction Officer employed at the NJ State Home for Boys (Jamesburg), located in Monroe Township, NJ. He was a black man, approximately 55 years of age, in 1965, approximately 5'11", 250 lbs., and he customarily worked the 7AM to 3PM shift, 5 days per week. He is sued in his individual and official capacities, and his estate. Defendant's identity and address is currently unknown, though, will be sought to be discovered through the Discovery Process.

13. Defendant Correctional Officer HOLMES was at all times mentioned herein a Correctional Officer in charge of the Guidance Unit at the NJ State Home for Boys (Jamesburg) located in Monroe Township, NJ.

5

He is described as a black male, 6'2", 240 lbs., approximately 30 years of age.  He is sued in his individual and official capacities, and his estate.  Defendant's full name and address is currently unknown, though, will be sought to be discovered through the Discovery Process.

14.  Defendant JOHN DOE III was at all times mentioned herein the Director of the NJ Department of Correctional Services for juveniles.  He is sued in his individual and official capacities.

15.  Defendant STATE OF NEW JERSEY is political division of the United States with capital in Trenton, New Jersey.  Defendant is sued in its official and individual capacities.

16.  Defendant JAMES DOE, was at all times mentioned herein a Probation Officer employed by the Probation Department in the County of Union, New Jersey.  He is sued in his individual and official capacities,

17.  Defendant JANE DOE, was at all times mentioned herein a Probation Officer employed by the County of Union, New Jersey.  She is sued in her individual and official capacities.

18.  Defendant COUNTY OF UNION, NEW JERSEY is a political subdivision of the state of New Jersey, with its county seat located in Elizabeth, New Jersey.  It is sued in its individual and official capacities.  Service upon the county by service on Office of County Counsel, Bruce H. Bergen, Esq., 10 Elizabethtown Plaza, Elizabeth, NJ 07207.

19.  Defendant JANE DOE I, was at all times mentioned herein a Probation Officer employed by the County of Union (NJ) Probation Department.  She is sued in her individual and official capacities and her Estate.

20.  Defendant JAMES DOE, was at all times mentioned herein a Chief, Probation Department employed at the County of Union (NJ) Probation Department.  He is sued in his individual and official capacities and he is sued in his individual and official capacities and his Estate.

21.  Defendant PBA LOCAL 105 is a union organization that at least three (3) defendants are members.  Defendant is sued in its individual and official capacities.  Service may be made upon the organization by

6

serving ……………………………….

22. All defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

### Facts

23. Plaintiff realleges each and every paragraph as set forth in paragraphs 1 through 22 as though same is set forth herein at length.

24. Plaintiff was incarcerated in Jamesburg in 1965, and was initially sent to the Reception Unit, (maximum security) where he stayed for approximately 6 weeks.  Plaintiff, age 12, was 5'7" in height and 110 lbs. in weight.

25. On or about the third day in RECEPTION, JOHN DOE lead plaintiff and approximately 7 other young Negro boys down the hall where their rooms were located.  JOHN DOE told the first young boy at the front of the line to stop in front of their cell and told the boy to drop his pants and underwear and lean forward.  JOHN DOE then struck the young negro boy multiple times.  After watching other boys being beaten, plaintiff was next in line and was ordered to drop his pants and underwear and then without explanation was sadistically, maliciously beaten with a wooden hardwood broom (7" x 2" x 2"), struck 5 times across his nude buttocks without regard to whether his testicles were hit or not, without any justification by JOHN DOE in front of these other boys.

26. JOHN DOE then ordered plaintiff to go in his room.  Plaintiff witnessed other children being beaten as well by JOHN DOE.  These systematic beatings went on for the six weeks while in the Reception Unit (maximum security) occurring every few days.  After being beaten, was ordered to go his assigned room, and locked in.

27. Defendant, JOHN DOE, was viciously, savagely beating plaintiff because he was white, and to humiliate in front of other negro boys which was extremely gratifying to JOHN DOE

to break plaintiff, cause long term Post traumatic stress disorder and diminish his masculine identity,

make cry.

28. Thereafter, after six (6) weeks had elapsed, plaintiff was transferred to a cottage housing unit, under

the supervision of Correctional Officer Williamson and House Mother, House Father Clemens.

29. Plaintiff was in a cottage unit which consisted of thirty black children and no whites.

Thereafter plaintiff escaped Jamesburg. Plaintiff was apprehended and returned.

30. Plaintiff, then 12-13 years of age, was placed in the Guidance Unit, 24 solitary confinement,

for approximately 90 days. Sensory deprived of any communication with humans, with the

exception of his parents who visited, reading material, etc.. No sink, toilet, and limited lighting from

6am to 6pm.

31. In or about 1965, plaintiff, then 12 years old, was removed from the Seventh grade at Maxon Junior

High School, in Plainfield, New Jersey and sentenced to the State Home for Boys, Jamesburg, New Jersey

by a Union County Court for juvenile delinquency, a property crime. Plaintiff spent approximately

eleven (11) months in the facility.

32. Plaintiff was sadistically, maliciously brutally beaten with a broom repeatedly every few days for the

six (6) weeks held in the Reception Unit by one (1) correctional officer in particular. Plaintiff was

threatened and physically assaulted by another correctional officer

**COUNT I**

**REPEATEDLY SAVAGELY SEXUALLY ASSAULTING 12 YEAR OLD BOY IS A VIOLATION OF THE 5TH, 8$^{TH\ and}$ 14TH AMENDMENTS OF THE U.S. CONSTITUTION, CRUEL AND UNUSUAL PUNISHMENT CLAUSE OF THE 8TH, THE EQUAL PROTECTION CLAUSE OF THE 5TH, AND DENIAL OF DUE PROCESS OF THE 5TH AND 14TH.**

33. Plaintiff realleges each and every allegation in paragraphs 1 through 32 as though same were

repeated at length herein.

34. JOHN DOE failed to identify any explanation or justification for any of the six brutal beatings with a

hardwood dust brush measuring 16" x 2" x 2".

8

35. JOHN DOE was the 3 PM to 11 PM employee, and there were officers that worked there.  The others had not attacked plaintiff.

36. The policy in RECEPTION was that plaintiff be held incommunicado.

37. Plaintiff stood 5'6", weighed 120 lbs..

38. NJ statute states that touching of the buttocks constitutes sexual abuse.

39. JOHN DOE sexually attacked and repeatedly beat plaintiff for his own gratification.  He acted without authorization, explanation or justification.  Plaintiff was never told why he was being subjected to these beatings.  The beatings were completely unreasonable and unwarranted.

40. Defendant JOHN DOE sadistically sexually assaulted plaintiff because plaintiff was white and he being black/negroid had animosity towards plaintiff and all white people for historical events including slavery.

41. Defendant JOHN DOE could see plaintiff's skin turning red and he received gratification and displayed that to the other negroid persons in the hallway.

42. Defendant JOHN DOE violated plaintiff's right to privacy.

43. These sexual attacks constituted Cruel and Unusual Punishment, denial of equal protection, and denial of due process in violation of the 5th, 8th and 14th Amendments of the United States Constitution, as moreover, NJ Constitution, Article I, section 12 for which defendant is liable and plaintiff seeks compensatory damages in the amount of $10,000,000.00, and punitive damages in the amount of $10,000,000.00.

## COUNT II
### ADMINISTRATOR(S) LIABILITY FOR FAILURE TO INTERVENE/PROTECT

44. Plaintiff realleges each and every allegation as contained in paragraphs 1 through 43 as though set forth herein at length.

45. In 1965 while in MAXIMUM SECURITY RECEPTION, the Superintendent, JOHN DOE I, who lived in a

residence on the state grounds failed to intervene to stop the sexual assaults by defendant JOHN DOE.

46. It was a violation to sexually assault plaintiff and JOHN DOE I, and Assistant should be held liable for failure to in intervene and protect 12 year old plaintiff.

47. Plaintiff spent a total of eleven (11) months in the NJ State Home For Boys and knows from daily occurrences that the administration uses 'Trustees' from other NJ State Prisons (e.g. Bordentown, Annandale, Trenton to escort the minor wards when walking outside if they are a security risk.

48. Plaintiff contends that defendant(s) JOHN DOE II and JOHN DOE III violated plaintiff's constitutional right to be free of Cruel and Unusual Punishment prohibited by the U.S. Constitution, Amendments 5, 8 and 14 for failing to intervene to stop sexual assault and are therefore liable.

49. Defendant(s) JOHN DOE I and JOHN DOE II could have utilized the trustees that were assigned to assist, so to insure plaintiff was protected, but failed to do so.

50. Defendant(s) JOHN DOE I and JOHN DOE II had a duty to intervene to prevent the use of excessive physical sexual abuse, violent sadomasochistic acts.

51. Defendant(s) JOHN DOE I and JOHN DOE II had a reasonable opportunity to intervene.

52. Defendant(s) JOHN DOE I, JOHN DOE II and their subordinates failed to intervene.

WHERFORE, defendant(s) JOHN DOE I and JOHN DOE II are liable for violation of plaintiff's constitutional rights under Amend, 5, 8, 14 of the U.S. Constitution and plaintiff seeks compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount of $1,000,000.00.

## COUNT III
## SUPERVISOR LIABILITY

53. Plaintiff realleges each and every allegation contained in paragraphs 1 through 52 as though set forth herein at length.

54. Defendant(s) JOHN DOE 1, JOHN DOE 2, were employed as Superintendent, in the reception unit of

10

Jamesburg, the Guidance Unit, and Cottage Unit and knew of the child sexual abuse of their fellow employee and did nothing to investigate and stop, so therefore acquiescence in the illegal conduct makes them equally liable.

55. Defendant(s) acts of failing to supervise, failure to protect constitute Cruel and Unusual Punishment prohibited by the 5th, 8th and 14th Amendments of the U.S. Constitution and comparable provisions of NJ Constitution for which plaintiff seeks compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount of $1,000,000.00.

## COUNT IV
## PEDOPHILE DEFENDANT'S PBA LOCAL UNION 105

56. Plaintiff realleges each and every allegation contained in paragraphs 1 through 55 as though set forth herein at length.

57. Defendant(s) JOHN DOE, WILLIAMSON, HOLMES were correction officers and members.

58. Defendant JOHN DOE, pedophile, was a member of the PBA Local Union 105.

59. Defendant PBA Local Union 105 provides multiple various types of support to employees of NJ State Home For Boys, including defendants who are pedophiles or child abusers

60. The leadership, administrators of the Local Union 105 knew that black officers would not be safe around white children because the black officer would retaliate against vulnerable white children for their years of slavery at the hands of whites. Knowing that, the Local 105 administrators acquiescent in the sexual assaults and did nothing to stop it.

61. Defendant PBA Local Union 105 knew that JOHN DOE was a pedophile assaulting children in general and plaintiff in particular and did nothing to stop it.

62. Defendant PBA Local Union 105, and its administrators in 1965 had knowledge of the illegal acts.

63. Defendant(s) worked closely with union officials and all other personnel.

The administrator(s) of Local 105 knew defendant John Doe was a pedophile but failed to stop, and

11

acquiescence in the illegal conduct and are therefore equally liable.  These acts constitute conspiracy

under 42 U.S.C. 1985, knowledge under 42 U.S.C. 1986, and are actionable under 1983 and the U.S.

Const. Amendments 5, 8, 14 for which plaintiff seeks compensatory damages in the amount

$1,000,000.00 and punitive damages in the amount of $1,000,000.00 from each.

### V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

64.  Plaintiff realleges each and every allegation contained in paragraphs 1 through 63 as though same is

set forth herein at length.

65.  Defendants sexual abuse/attacks and pattern of failure to protect or intervene in the sexual assaults

by other residents constitutes violation of plaintiff's constitutional rights under the 5, 8, and 14th

Amendments of the U.S. Constitution

66.  Plaintiff was under the care of a psychologist as result of the sexual assaults, child abuse.

67.  Defendant's sexual assaults were excessive, traumatic and caused plaintiff to suffer from Post

Traumatic Stress Disorder.

68.  Reputable references have established that physical sexual assault increases aggression, antisocial

Behavior and Post traumatic stress disorder.

69.  Defendants actions/inaction constituted Intentional Infliction of Emotional Distress upon a 12 year

old boy and compensatory damages in amount of $1,000,000.00 and punitive damages in the amount of

$1,000,000.00

### VI. ASSAULT

70.  Plaintiff realleges each and every allegation alleged in paragraphs 1 through 69 as though same

were set forth herein at length.

71.  Plaintiff was housed in a house with approximately thirty (30) other minor boys of similar age.

72.  The thirty (30) boys were supervised by one (1) adult, and cottage parent on the third floor.

73.  The regular supervisor was a negro with a black complexion, assaulted by approximately seven (7)

residents, while under his supervision.  Defendant Williamson saw that plaintiff had black eyes, busted

lip and did nothing.

74.  Those assaults occurred in cottage, while under supervision of Correctional Officer Williamson.  John

Doe I, John Doe II, and Williamson knew of the assaults and acquiescent in the attacks and is therefore

liable to plaintiff for conspiracy, acquiescent under 42 U.S.C. 1985, knowledge under 42 U.S.C. 1986 and

actionable under 42 U.S.C. 1983 for violation of plaintiff's right to be free from Cruel and Unusual

Punishment, Equal Protection under the 5, 8, 14 Amendments of the U.S. Constitution and plaintiff seeks

compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount of

$1,000,000.00 from each defendant.

**COUNT VII.**
**ADMINISTRATOR(S)PLACEMENT IN COTTAGE WITH 30 BLACKS WAS RACIAL DISCRIMINATION, DENIAL OF EQUAL PROTECTION, CRUEL AND UNUSUAL PUNISHMENT AND CONSEQUENTLY RESULTED IN PLAINTIFF BEING ASSAULTED BY MULTIPLE BLACK RESIDENTS WITH IMPUNITY IN VIOLATION OF 5TH, 8TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION, (I.E. CRUEL AND UNUSUAL PUNISHMENT CLAUSE).**

75.  Plaintiff realleges each and every allegation contained in paragraphs 1 through 74 as though set

forth herein at length.

76.  Defendant JOHN DOE I, Superintendent, NJ State Home For Boys was the administrator who

controlled placement of wards, like 12 year old white plaintiff in a select institutional cottage.

77.  Defendant JOHN DOE II, Assistant Superintendent of the NJ State Home For Boys was a member of

the administration who ordered a minor boy to reside in a specific institutional cottage.

78.  The acts of defendant(s) JOHN DOE I, and JOHN DOE II who placed plaintiff in Cottage, supervised by

Mr.Williamson, and with Clements as House Parents with thirty (30) black boys was a denial of equal

protection and a violation of plaintiff's right to be free from Cruel and Unusual Punishment as

guaranteed by the 5th, 8th and 14th Amendments of the U.S. Constitution.

79.  Defendant(s) JOHN DOE I and JOHN DOE II placement in the Cottage with 30 black youth resulted in

plaintiff continuously being threatened, assaulted by multiple black boys.

80. Plaintiff had to continuously fight off black rapists, thieves.

81. Defendant(s) JOHN DOE I and JOHN DOE II targeted plaintiff whom was white.

82. When plaintiff was committed to NJ State Home For Boys, there was two (2) of us (i.e. the boy

arrested with) and he was placed in Cottage 14 where there more whites.

83. Defendant(s) JOHN DOE I and JOHN DOE II violated plaintiff's constitutional rights under the Cruel

and Unusual Punishment Clause, and Equal Protection Clause of the 5th, 8th and 14th Amendments of the

U.S. Constitution and money damages are sought. Compensatory damages. $1,000,000.00 and Punitive

damages in the amount of $1,000,000.00 from each defendant.

**COUNT VIII.**
**WILLIAMSON, CLEMENTS LIABILITY FOR FAILURE TO INTERVENE**
**WHEN PLAINTIFF WAS ATTACKED BY MULTIPLE ADOLESCENTS OF 30 BLACK RESIDENTS.**

84. Plaintiff realleges each and every allegation contained in paragraphs 1 through 83 as though set

forth herein at length.

85. Plaintiff was placed in Cottage 4 with approximately 30 other boys.

86. The cottage was a house with three (3) floors.

87. The cottage parents Mr. and Mrs. Clements had a permanent residence on the third floor.

88. Dormitory and day room was on the first floor.

89. The basement was where the showers, lockers, storage were located.

90. There was usually one correction officer on duty, working three (3) shifts.

91. Most all of the assaults upon plaintiff occurred in the basement.

92. The supervisor knew or with diligent investigation that all assaults occurred in the basement.

93. Plaintiff went to Correction Officer Williamson and requested a transfer to another cottage.

94. Plaintiff was never transferred.

95. The NJ State Home For Boys utilized approximately 50-75 'Trustees' that come to the institution

14

from other prisons in the vicinity (e.g. Bordentown) to perform a variety of tasks like escort a boy from

buildings outside if a risk of running away.

96.  Plaintiff was attacked on multiple occasions and the fight could be heard because we would bang

into the lockers that lined the wall, and also a fight would attract spectators, though, never did

Williamson, nor Clements intervene or have any of their many 'Trustees' come to intervene.

97.  The violent attack on plaintiff constituted a violation of his constitutional right to be Defendant(s)

Williamson violated plaintiff's constitutional right to be free

from Cruel and Unusual Punishment under the 8th Amendment of the U.S. Constitution.

98.  Plaintiff suffered a broken nose, broken lips, cracked teeth, scraps, abrasions, black eyes.  In

addition, plaintiff suffered from Post-traumatic Stress Disorder and subsequently, was under the care of

a psychiatrist, psychologist.

99.  Defendant(s) Williamson, Mr. & Mrs. Clements are liable for that violation because defendants

failed to intervene to stop the repeated violations.

100.  Defendants had a duty to intervene to prevent the use of excessive force by another resident

ward.

101.  Defendants had a reasonable opportunity to intervene.

102.  Defendants had 'Trustees' that they could use to provide additional supervision of violent

adolescents.

103.  Defendants failed to ever intervene.

WHEREFORE, upon the foregoing, defendants are liable for violating plaintiff's constitutional

right to be free from Cruel and Unusual Punishment under the 5th, 8th and 14th Amendments to the U.S.

Constitution and compensatory damages in the amount $1,000,000.00 are sought, in addition to

punitive damages in the amount of $1,000,000.00.

## IX.  PLACEMENT IN SOLITARY CONFINEMENT FOR 60-90 DAYS WAS CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 5TH, 8TH, 14TH AMENDMENTS OF THE U.S. CONSTITUTION, CAUSING POST-TRAUMATIC STRESS DISORDER

104.  Plaintiff realleges each and every allegation contained in paragraphs 1 through 103 as though set

forth herein at length and made apart of this count.

105.  Plaintiff, Ted McCracken, 12, had left the facility without permission, and subsequently

apprehended and returned to NJ State Home For Boys.

106.  Upon return, plaintiff was placed in solitary confinement for 60-90 days.

107.  Plaintiff was denied anything other than a blanket, sheet.

108.  No sink, no water, no toilet, NO WASHING, TOOTH BRUSH, BUT ONCE A WEEK

109.  Light was turned off at 6pm.

110.  The concrete room was without air conditioning.

111.  The principal supervisor was Correctional Officer Holmes.

112.  Placement in solitary of 12 year old was cruel and unusual punishment in violation of the 5th, 8th

14th Amendments of the U.S. Constitution resulting in permanent Post-Traumatic Stress Disorder for

which plaintiff seeks compensatory damages in the amount of $1,000,000.00 and punitive damages in

the amount of $1,000,000.00.

### COUNT X

## GOVERNOR HUGHES ESTABLISHED THE POLICY, CUSTOM WHICH JOHN DOE, COMMISSIONER, NJ DEPARTMENT OF CORRECTIONS/JUVENILE JUSTICE SERVICES AS SUBORDINATE TO GOVERNOR HUGHES DID FOLLOW THEREBY DEPRIVING PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS.

113.  Plaintiff realleges each and every allegation contained in paragraphs 1 through 112 as though set

forth herein at length.

114.  Defendant VICTORIA L. KUHN, predecessor, as Director of NJ Department of Correction overseen

the daily operations of the facility, along with Superintendent, subordinates of the governor.

16

115. It appears Hughes, and his subordinates specifically sought out and chose the Dominican (Yellow) to be the Correction Officer in RECEPTION unit at NJ State Home For Boys because he was a spanish foreigner, who had no community ties, nor relatives in New Jersey, and who had no respect for the local english children of New Jersey irrespective if were they white or black, he still received extreme gratification in molesting, and inflicting pain on the New Jersey children residents, including plaintiff.

116. In Governor Hughes tenure he executed three (3) men on Death Row. These were the last to be executed.

117. Hughes, and his administration obviously had a policy, custom to 'weed' out those children he and his administration found to be <u>undesirable</u>, by savagely beating them until submissive, damaged psychologically, emotionally.

118. Its ironic that New Jersey is the "Garden State", because that is exactly what state employee JOHN DOE, JOHN DOE I, JOHN DOE II were doing, was 'weeding' the garden.

119. There was only one (1) state institution for young boys, so obviously Hughes knew, ordered or acquiescent in the brutal savage sexual assault upon young boys like plaintiff in NJ State Home For Boys, done by Hughes and his subordinates hand-picked staff.

Indeed, its plaintiff allegation that sexual assaults were common daily occurrence.

120. Richard Joseph Hughes served for eight years and he knew or should have known (Negligence) that these black minority members would retaliate against a white for their decades of oppression.

Did he not <u>use</u> as his name is pronounced, USE and abuse children in the state institutions.

121. Circumstantial evidence proves that Governor Hughes was conducting human trafficking, by brutally sexually attacking those minor boys he felt were <u>undesirable</u>. He made the policy, custom to illegally, unlawfully brutally sexual assault those young boys whom came into the New Jersey state home for boys.

17

122. Hughes, his subordinates who followed his brutal policies/customs of (1) sexually attacking undesirables; (2) place undesirable white plaintiff with overwhelming number of 30 black adolescents where he could predict white plaintiff would be attacked; (3) subject to long-term solitary confinement, Based upon the foregoing, defendants Hughes, JOHN DOE I, JOHNNDOE II did deprive plaintiff of his constitutional right to be free of Cruel and Unusual Punishment, Equal Protection as guaranteed by the 5th, 8th and 14th Amendments of the U.S. Constitution causing plaintiff to suffer Post traumatic Stress Disorder and is therefore liable for compensatory damages in the amount of $15,000,000.00 and punitive damages in the amount of $20,000,000.00.

## XI. LOSS OF CONSORTIUM

123. Plaintiff realleges each and every allegation contained in paragraphs 1 through 122 as though same is set forth at length.

124. Plaintiff lost the consortium of his father after he learned of the beatings to plaintiff and had difficulty dealing with it.

125. Ultimately plaintiff's father passed away at 50 years of age.

126. WHEREFORE, based upon the defendants JOHN DOE, JOHN DOE I, JOHN DOE II, RICHARD HUGHES, CORRECTION OFFICER WILLIAMSON, CORRECTION OFFICER HOLMES, JAMES DOE, JANE DOE, JAMES DOE I, JANE DOE I violations of plaintiff's constitutional rights to not be subjected to Cruel and Unusual Punishment under the 5th, 8th, and 14th Amendments of the U.S. Constitution (i.e. repeated sexually assault by JOHN DOE, staff at NJ State Home For Boys; failure to intervene to protect plaintiff, and solitary confinement) which was the proximate cause of plaintiff's loss of consortium of his father and defendants are liable for compensatory damages in the amount of $5,000,000.00 and for punitive

18

damages in the amount of $5,000,000.00 to be paid by each defendant.

## COUNT XII
## NEGLIGENCE

127. Plaintiff realleges each and every allegation contained in paragraphs 1 through 126 as though set forth herein at length.

128. Defendants JOHN DOE, GOVERNOR RICHARD HUGHES, SUPERINTENDENT OF JAMESBURG committed acts constituting NEGLIGENCE, CHILD ABUSE, SEXUAL ABUSE as defined in the NJ Child Victims Act, when in a 60 day period in 1965, JOHN DOE did without justification, nor explanation while holding 12 year old plaintiff incommunicado in a Reception Unit of Jamesburg forcibly, sadistically beat plaintiff with a hardwood brush across his buttocks repeatedly on multiple days for his own sexual gratification.

129. In 1965 there was only one (1) facility in the New Jersey state system for young boys 6 to 16. That one facility was Jamesburg. Jamesburg has had a reputation for being a Gladiator School.

130. Was held incommunicado unable to communicate with parents.

131. Defendants knew or should with due diligence have known of the pedophile attacks on the children of New Jersey and are therefore liable for the horrendous acts as the individual who committed the acts.

132. The state correctional officer acting under color of state law tried repeatedly to break plaintiff, diminish the masculine traits of a young boy.

133. Defendants JOHN DOE, JOHN DOE I, GOVERNOR HUGHES, did deprive plaintiff of his constitutional Rights, committing the state law tort of Negligence and therefor are liable for money damages. Compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount $1,000,000.00 to be paid by each defendant.

## COUNT XIII
## CHILD SEXUAL ABUSE

134. Plaintiff realleges each and every allegation contained in paragraphs 1 through 133 as though same were set forth herein at length.

135. Defendant HUGHES, created a policy and enforcing it amongst his subordinates intentionally, knowingly hired HUGE black men to work in the State Home for Boys that were 6'2"- 7' feet tall thereby with racial, ethnic, religious invidious motives intimidating, threatening, capable of attacking children singularly physically, sexually abusing.

136. These policies, customs created by Hughes, 1962-1970, under the Hughes administration, DOC Commissioner were the proximate cause of plaintiff being repeatedly sexually assaulted with beatings by a correction officer, and being placed in environment without protection and solitary confinement for which plaintiff seeks compensatory damages in the amount of $5,000,000.00 and punitive damages in the amount of $5,000,000.00.

## COUNT XIV.
## JOHN DOE I, JOHN DOE II, SUPERINTENDENT'S POLICY WAS TO BRUTALLY SEXUALLY ABUSE CHILDREN IN THE STATE HOME FOR BOYS

137. Plaintiff realleges each and every allegation contained in paragraphs 1 through 136 as though set forth herein at length.

138. In 1965 when plaintiff was in the reception Unit the youth population were all of similar size and age as plaintiff (5'7", 110 lbs.).

139. Based upon the population there was absolutely no reason to employ a officer who was huge compared to residents. Huge officers had not previously been employed at the Union County Juvenile Detention Center.

140. Based upon the circumstantial evidence, consisting of the initial weeks spent in reception, held incommunicado, the extraordinary height and weight of the correction officer working there its alleged

that the sexually assaults on children was a common custom policy of the Superintendent,

Hughes, and DOC Commissioner.

WHEREFORE defendant JOHN DOE I, JOHN DOE II, HUGHES policy to sexually assault minor

children was the proximate cause of plaintiff being deprived of his constitutional rights to not be subject

to Cruel and Unusual Punishment guaranteed by the 5th, 8th and 14th Amendments of the U.S.

Constitution and therefore defendants are liable for money damages in the amount of $5,000,000.00 in

compensatory damages and $5,000,000.00 in punitive damages.

## COUNT XV
## JAMES DOE, PROBATION DEPARTMENT CHIEF, UNION COUNTY (NJ) PROBATION DEPARTMENT FAILED TO ADEQUATELY TRAIN OR SUPERVISE ITS PERSONNEL

141. Plaintiff realleges each and every allegation contained in paragraphs 1 through 140 as though set forth herein at length.

142. Plaintiff claims that James Doe, Probation Department Chief, Union County (NJ) Probation Department adopted a policy of inadequate training and supervision of personnel and that this policy caused the violation of plaintiff's right to not be subjected to Cruel and Unusual Punishment, and be denied Equal Protection.

143. Defendant JAMES DOE, Chief, of the Union County (NJ) Probation Department had inadequate training program to train its employees to carry out their supervision, investigative duties regarding juveniles.

144. The failure of JAMES DOE, Probation Chief of the Union County (NJ) Probation Department to adequately train its personnel amounted to deliberate indifference to the fact that gross malfeasance would obviously result in the violation of plaintiff's federal constitution right to Equal Protection (5th and 14th Amendments, U.S. Const.), and to be free from Cruel and Unusual Punishment (5th, 8th and 14th)Amendments, U.S. Const.), inter alia, plaintiff never should have been recommended by Union

21

County Probation Chief, nor subordinate personnel to be sent to the grossly violent environment of the

NJ State Home For Boys for such a petty property theft of under $200.00.

145. The failure of defendant, JAMES DOE, Probation Department Chief, Union County (NJ) Probation

Department to adequately train its personnel proximately caused the violation of plaintiff' rights to

Equal Protection, Cruel and Unusual Punishment. DEFENDANT JAMES DOE, Chief, Union County

Probation Department, headquartered in Elizabeth New Jersey is liable for the Inadequate Training and

Supervision and they not being properly trained to supervise nor protect children under its care and

plaintiff seeks compensatory damages in the amount of $10,000,000.00 and punitive damages in the

amount of $15,000,000.00

## COUNT XVI
## PLAINTIFF SUFFERED PTSD FROM THE REPEATED SEXUAL ASSAULT
## BEATINGS AND SOLITARY CONFINEMENT

146. Plaintiff realleges each and every allegation contained in paragraphs 1 through 145 as though same
is set forth herein at length.

147. All reliable references state that punishment will cause the child to become more violent, and use
violence to respond to problems.

148. The beatings marked a change, plaintiff was damaged emotionally, psychologically. Plaintiff was a
good boy. He received an Award for 'Perfect Attendance' if the fourth grade. He was given a Badge and
worked as a crossing guard at the Emerson Elementary. Plaintiff was a newspaper carrier for the
Courier-News, delivering newspaper 6 days a week. He had above average intelligence.

149. Plaintiff consulted child psychologist after leaving Jamesburg.

150. Defendants HUGHES, JOHN DOE, JAMES DOE, JOHN DOE I, WILLIAMSON, HOLMES sexual assault,
failure to protect plaintiff and solitary confinement are the proximate cause of plaintiff being afflicted
with Post traumatic Stress Disorder and therefore liable for compensatory damages in the amount of

22

$5,000,000.00 and punitive damages in the amount of $10,000,000.00.

## COUNT XVII
## LOSS OF CONSORTIUM

151. Plaintiff realleges each and every allegation contained in paragraphs 1 through 150 as though set forth herein at length.

152. In 1973 plaintiff was married and thereafter wife Dianna and I had a daughter (d.o.b. 12/30/1974) Plaintiff's marriage was tragically cut short after three years due to incarceration brought on by plaintiff exhibiting symptoms of Posttraumatic Stress Disorder which occurred after traumatic experiences of sexual abuse in Jamesburg in 1965 and he lost contact with both wife and daughter.

153. These facts constitute loss of consortium of wife and daughter and defendants are liable for monetary damages, compensatory damages in the amount of $5,999,000.00 and punitive damages in the amount of $10,000,000.00.

## COUNT XVIII
## SUPERINTENDENT, STATE OFFICIALS SEXUALLY ASSAULTED, ABUSED PLAINTIFF IN VIOLATION OF THE 5TH, 8TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION, IN ADDITION TO ARTICLE I, SECTION 12 OF THE NJ CONSTITUTION.
## PERSONNEL WERE ILL TRAINED, FAILED TO SUPERVISE OR SCREEN PERSONNEL PROPERLY IN THE HIRING PROCESS

154. Plaintiff realleges each and every allegation contained in paragraphs 1 through 153 as though same was set forth herein at length.

155. Plaintiff asserts allegation that GOVERNOR HUGHES who was governor of New Jersey in 1965.

156. In the governors initial years in office he executed all of the men that were sitting on New Jersey's Death Row. There have been no executions since.

157. Based upon the evidence, circumstances experienced in the New Jersey State Home For Boys (Jamesburg) plaintiff asserts allegation that Governor Richard Hughes was on a mission to implement actions to make NJ State Home For Boys a horrific destination for children, hiring men that were 6'2"-

6'5" to work as supervisors in the NJ State Home For Boys who were physically capable of sexually

attacking children. (Commissary/Security Officer-6'5"; Guidance Unit-Holmes 6'3"; Reception Unit-

Dominican-6'2")

158.  Plaintiff asserts that there was no legitimate reason to employ these huge black correction officers,

other than to intimidate, physically assault the minor children that lived there.

159.  They were incompatible with the boys and in fact traumatized an entire generation of children.

160.  Plaintiff asserts that while he was held in the Union County there were no huge officers employed.

161.  The large officers had a propensity to violence, and sexually attack children, and intimidate

children so to continue on their reign of terror without apprehension.

162.  Plaintiff asserts that defendants JOHN DOE I, JOHN DOE II, HUGHES illegal actions were the

proximate cause of plaintiff deprived of his constitutional right to be free of Cruel and Unusual

Punishment, Equal Protection and due process and therefore liable to plaintiff for compensatory

damages in the amount of $5,000,000.00 and punitive damages in the amount of $6,000,000.00.

COUNT XIX<br>SAVAGE SEXUAL ASSAULT CONSTITUTED A HATE CRIME

163.  Plaintiff realleges each and every allegation contained in paragraphs 1 through 162 as though set

forth herein at length.

164.  JOHN DOE, DOMINICAN, NEGRO WHO SAVAGELY BEAT WHITE PLAINTIFF AT TWELVE YEARS OLD

CONSTITUTED A HATE CRIME AS DEFINED BY STATE AND FEDERAL LAW.

PLAINTIFF WAS TRAUMATIZED BY THE SEXUAL ASSAULT WHICH WAS PERFORMED IN FRONT OF AN

AUDIENCE OF NINE (9) BLACK NEGRO CHILDREN AND THEY ALL ENJOYED GRATIFICATION IN

SEEING PLAINTIFF SAVAGELY BEATEN.

165.  Plaintiff asserts that defendant JOHN DOE illegal actions of repeated brutal sexual assault

constituted deprivation of plaintiff's federal constitution rights to not be subjected to Cruel or Unusual

24

Punishment as is guaranteed by the 5th, 8th and 14th Amendments of the U.S. Constitution and defendant

is therefore liable to plaintiff for compensatory damages in the amount $5,000,000.00 and

$6,000,000.00 in punitive damages.

COUNT XX

166. Plaintiff realleges each and every allegation contained in paragraphs 1 through 165 as though set
forth herein at length.

167. Superintendent JOHN DOE I, JOHN DOE II had a policy, custom of sexually attacking boys, solitary
confinement.

168. In 1965, while plaintiff was in the NJ State Home For Boys, JOHN DOE I, JOHN DOE II was
Superintendent.

169. Plaintiff alleges that he was deprived of his federal constitutional rights to be free from Cruel
and Unusual Punishment by (1) being savagely sexually assaulted upon initial admission to NJ State
Home For Boys; (2) plaintiff being white was placed in housing unit with 30 other blacks and on
numerous occasions had to fight off sexual attacks by black residents and supervisor failed to
intervene; (3) plaintiff was locked in solitary confinement long-term for 60-90 days.

170. Plaintiff asserts that the Superintendent, JOHN DOE I is liable for the aforementioned deprivations
because the Superintendent created an "Official policy and custom" that all would be sexually assaulted
upon entry into facility, held long-term in solitary confinement, and do not intervene to stop violent
attacks whether racial motivated or not.

171. The official policy was made by the Superintendent JOHN DOE I, JOHN DOE II.

172. The custom was a well-settled practice that constitutes a standard operating procedure.

173. The superintendent, JOHN DOE I, JOHN DOE I made the 'official policy and custom, standard

operating procedure of the facility with deliberate indifference to the fact it was highly predictable consequence that violations of federal constitutional rights would occur.

174. Defendants JOHN DOE I, JOHN DOE II, were responsible for Inadequate screening during the hiring process; inadequate training; inadequate supervision; and failure to adopt a needed policy or modify the old policy.

WHEREFORE, defendants JOHN DOE I, JOHN DOE II were responsible for a illegal policy, custom whereby adolescents in general and plaintiff in particular were regularly sexually assaulted because they were classified as undesirable, and solitary confinement regularly metered out in violation of plaintiff's constitutional right to not be subjected to Cruel and Unusual Punishment , Equal Protection under the 5th, 8th and 14th Amendments of the U.S. Constitution and therefore defendants JOHN DOE I, JOHN DOE II are liable for compensatory damages in the amount of $5,000,000.00 and punitive damages in the amount of $5,000,000.00.

26

## COUNT XXI

## FAILURE TO INTERVENE

175. Plaintiff realleges each and every allegation contained in paragraphs 1 through 174 as though set forth herein at length.

176. Defendant Williamson, Mr. Clement, Mrs. Clement were black, acting under color of state law, when they were supervisors of a Cottage in the NJ State Home For Boys located in Monroe Township, NJ.

177. Plaintiff was 12 years of age at the time, was 5'7", 110 lbs., white and there were more than 30 black residents which constituted a gang, and defendant officers were also black, and plaintiff had to fend for himself.

178. Plaintiff had a constitutional right to be free from sexual assault. Defendants were obligated to protect plaintiff from physical attack by black residents and they did not ever intervene.

179. Defendants Williamson, Mr. Clement, Mrs. Clement were employed by the state of New Jersey and were acting under color of state law when they deprived plaintiff of his federally protected constitutional right guaranteed by the Eighth and Fourteenth Amendment(s) of the United States Constitution to be free from cruel and unusual punishment when they failed to intervene to protect plaintiff as he was in a daily life or death struggle to defend himself against sexual assault by other residents and engaged in multiple fistfights. Weaker boys were seen being sodomized.

180. Plaintiff sustained injuries and subsequently escaped the institution. Plaintiff sustained broken nose, cracked teeth, and lip severely broken.

181. On one (1) occasion, Correction Officer Williamson did, without provocation, assault plaintiff by punching plaintiff in the side of his face without warning.

182. Reform school officials have a duty to protect inmates from violence at the hands of other

27

Prisoners based upon the Eighth Amendment to the U.S. Constitution. A.M. ex. Rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 587 (3d Cir. 2004). In this case, plaintiff claims that defendant Williamson, Mr. Clement, Mrs. Clement violated the Eighth Amendment to the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to plaintiff. Specifically, plaintiff claims that

There was a substantial risk of serious harm to plaintiff, whom was white, - namely, a substantial risk that plaintiff would be attacked by 30 black prisoners.

Defendants were deliberately indifferent to that risk.

Plaintiff would have suffered less or no harm if defendants had not been deliberately indifferent,

Plaintiff would not have had to escape from the institution had defendants not been deliberately indifferent.

183. WHEREFORE, defendants Williamson, Mr. Clemens, and Mrs. Clemens violated plaintiff's constitutional rights to be free from Cruel and Unusual Punishment as is guaranteed by the 5th, 8th and 14th Amendments to the U.S. Constitution and defendants are therefore liable to plaintiff for compensatory damages in the amount of $5,000,000.00 and punitive damages in the amount of $6,000,000.00.

**COUNT XXII**
**UNION COUNTY PROBATION CHIEF JAMES DOE AND SUBORDINATE OFFICERS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE FREE FROM CRUEL AND UNUSAL PUNISHMENT GUARANTEED BY 5TH, 8TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION, STATE CONSTITUTION BY ORDERING PLAINTIFF TO BE INSTITUTIONALIZED AND BRUTALIZED FOR PETTY PROPERTY OFFENSES**

**MUNICIPAL LIABILITY OF UNION COUNTY, NEW JERSEY**

184. Plaintiff realleges each and every allegation contained in paragraphs 1 through 183 as though set forth herein at length.

28

185. Plaintiff is Caucasian as both his parents.

186. In or about 1964, when plaintiff was 11 years of age, plaintiff was placed on probation by the Union County, NJ court after found guilty of juvenile delinquency (i.e. stealing approximately $200.00 from a individual he was doing yard work for.

187. Approximately a year later, at age 12, plaintiff was found with two (2) magazines that had been delivered outside a convenient store in the early hours. For that infraction, the Union County Probation Department, its officers, James Doe, James Doe I, Jane Doe, Jane Doe I recommended that plaintiff be sent to NJ State Home For Boys.

188. Plaintiff alleges that Union County, NJ Probation Department Chief, JAMES DOE and subordinate personnel, JANE DOE, JAMES DOE I sought excessive punishment, strict discipline for what were petty property infractions due to their invidious discriminatory motives, bias and prejudice towards plaintiff due to his nationality, religion, because they thought plaintiff, and/or his parents were thought sympathetic towards blacks, and were outsiders, father was born in Canada, and a few years earlier we had moved to Union County, New Jersey from Malone, NY near the Canadian border. We were Protestants and members of the county probation department were Catholic.

Plaintiff's mother's name is Simpson like unto the Civil War President Ulysses Simpson Grant, and plaintiff was then residing in the Union County of New Jersey, because the word UNION was a term of endearment, after a Simpson served as General of the UNION ARMY, and President. Plaintiff' parents moved to Union County thinking it would be a friendly environment, and instead found animosity amongst the personnel at the Union County Probation Department, James Doe, Jane Doe, Jane Doe I, James Doe I.

189. Union County is a political subdivision liable for the torts, constitutional violations of the Union County Probation Department, its Chief and its employees.

29

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _30_ day of _November_ , 20_21_ .

Signature of Plaintiff _____

Mailing Address __15 Derry Drive_____

__North Wales, PA  19454_____

Telephone Number ___(484) 426-4739_____

Fax Number *(if you have one)* _____

E-mail Address ___mccracken.theodore@yahoo.com___

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: _____

- 5 -